Good morning. May it please the Court. Scott Mosman for Petitioner, Haris Saraj. First, I'd like to apologize for my 28-J letter. It mistakenly said that El-Hemry cited 8 CFR 208.16f. It doesn't. That was a mistake on my part. But despite the 28-J letter, I don't think jurisdiction is much of an issue in this case because the board's errors were legal errors, not factual errors. And counsel for the government doesn't dispute that legal errors are reviewable by this Court. So I'd just like to point out on the jurisdictional issue the precedent of this Court. Under Almagazar v. Gonzales, the Court exercised jurisdiction to review the merits of a CAT claim for substantial evidence despite the existence of criminal convictions listed under 1252A2C. Whether that was right or wrong, it really doesn't have any effect on your case, does it? I don't believe so, Your Honor. Okay. So you've got enough interesting issues here. Certainly, Your Honor. Without tilting at one that doesn't matter. Certainly, Your Honor. Turning to the merits of the case, concerning the other person acting in an official capacity issue, I'd like to modify my argument slightly from the briefs in light of the Supreme Court's decision in Gonzales v. Thomas. The terms public official and other person acting in official capacity have to each mean something different. So what does it mean? Well, the Board didn't decide that clearly, and it hasn't decided that issue clearly or it hasn't decided the issue at all in any of its published opinions. And I don't think a single ambiguous sentence in a per curiam decision that was unpublished by the Board by a single Board member instead of a panel of three, which usually decides novel legal issues like this, I don't think this Court can extrapolate from that to create a rule. So I think remand is the only proper thing for that issue. Okay. But in order to get, I mean, I guess it goes without saying, I would agree with you. But you've got to get to the legal, I mean, you've got to get to a problem first. So hence my question, if you were defining it, how would you define or other person in an official capacity? Well, I'd define it as I defined it in my briefs, and that's a person who exercises governmental who exercises governmental authority, not just a terrorist, not just a thug, not just someone who does bad things, but someone who actually governs a part of a country to the exclusion of the central government. And here there is strong evidence in support of that. The expert witness testified at AR. Your concept would have official capacity defined entirely as the de facto government notion. Is that, have I got it right? Yes, Your Honor. And there's strong evidence to support that. Even the IJ, in the IJ's decision, specifically found that, quote, warlords rule their areas of Afghanistan with impunity. And that's at AR-122. Putting that together with the concept of relocation, the fact that somebody happens to control some territory, and indeed there may be American cities where it could be fairly argued that our own version of warlords control given blocks of the city, does that mean the whole country is out of bounds? And that sending somebody back to that country where they could relocate in a different part, in this case of Afghanistan, means we should recognize the person that happens to have a reign of terror in one corner of the country should count as a public official for the whole nation. Well, I think it should count as a public official. But under the CAAT definition, of course, if you can relocate to another part of the country, you're never going to meet the standard of 51%. Here the board didn't rely on internal relocation for the good reason that the expert witness testified that the only places that this person could return to, General Dostum could get him. And that's Kabul and the northern areas. He couldn't return to the Pashtun areas because, as the expert witness testified, you know, Afghanistan is a tribal society, and the Pashtun consider Tajiks, like my client, their enemies. And they'd rather fight Tajiks than, you know, anybody else. So I – but the board didn't decide it on internal relocation. But the board didn't use your definition either. And that's why I'm considering it. The definition you're offering up gives me some pause because the notion that somebody controls a piece of a nation, I'm not sure that really properly translates into being a public official for the purposes of the whole nation. Well, a city mayor or a regional governor, that clearly would be a public official, and that's what Dostum acts as in his region. I mean, it's a tribal society where there have always been warlords controlling the different regions, not central government figures. So, I mean, here we're talking about the definition of torture under the Convention Against Torture, but the major limitation on cap relief has always been 51 percent. You have to clear the high bar of 51 percent. So whether or not he's defined as a public official, if you can't clear the high bar of 51 percent, you're not going to get the relief anyway. So I would say that the public official, he is a public official and he'll get cap relief if he can show that the likelihood of torture is 51 percent. And if he can relocate to another part of the country, then it's not going to be 51 percent. How, as a practical matter, is your definition workable? It's workable because if, you know, in a country where the government basically cannot control different regions, the people, if there are people who are going to torture the person in that, in the region that they could return to, then that would be a public official. It gets kind of complicated by other aspects of foreign policy, too, because, I mean, the United States recognizes government. I mean, that's what it's in the business of doing. Courts don't. The executive branch does. And here it is recognized the central government of Afghanistan as the government. Now, it may be that it doesn't have effective control over the entire country, but nevertheless, that's the recognized government. In the Somalia case, where the theory comes from, there was no central government. So then it makes some practical sense to say, okay, here's an area of land that has no recognized government. So therefore, who's in practical control? I have a lot of trouble understanding how your theory can square with the executive branch's right to recognize government. It's like a hash. Yes, Your Honor. But the Somalia case, you're right, it did turn a lot on practical considerations. It did not acknowledge the difference between public official and other person acting in an official capacity. And in those cases, the person could return to part of, you know, the countries. But isn't that pretty simple? I mean, does it mean anything more than, you know, going back to old Western movies? I seem to remember movies where a marshal deputizes somebody. So the marshal could deputize you. Now, you're not a public official. The marshal is. He deputizes you and sends you out. And so when you go out and do something, you're acting in another person acting in an official capacity. Well, that's a – yes, that's a – I mean, that's – the board could define it that way if it wanted to, but it hasn't defined it that way. And we presented this argument squarely in our briefs to the board, and it just – Like a Macy's security guard in the 1983 cases who we say is acting under color of law, even though he's plainly working for Macy's, but he's sort of doing the work of the police department sufficiently so that one can look at it and say, ah, this guy is working under color of law. Well, I think the under color of law is kind of – I mean, that's – that's not what the board – I mean, that's not what the convention talks about. It talks about public official or other person acting in official capacity. And, you know, I mean, if the board wanted to extend it so far as to include Macy's security guards, I suppose it could. I doubt that it will. But this is an important issue, and the board refused to address our arguments in the brief to the board. Well, you know, there's probably a pretty good reason for that, since the – the argument was in one sentence under a subheading that had absolutely nothing to do with the pitch. I mean, I grant you it's in there. It's one line at the back of the brief under a different subheading. So do you really fault the board for not dealing with it? Well, I do, because, Your Honor, the board's practice manual says that briefs should not belabor issues that are not in dispute. And the immigration judge didn't base his decision on this ground. The trial attorney for the government repeatedly declined the I.J.'s invitations to argue this issue. And so, I mean, that wasn't – I mean, I wasn't going to devote pages to something that the I.J. didn't base his decision on and that the trial attorney refused to argue to the immigration judge. So I focused on the issues that were in the immigration judge's decision. You know, not to be philosophical about this, but unfortunately we live in a world where recognized governments did not really have governmental – practical governmental control on what's going on in a particular country. And, you know, look at the Middle East. I mean, we're in the middle of an area that we recognize a government and a government – we recognize whoever it is in Iraq and he comes and talks to the president, but he's no more in control of what's going on in that country than Santy Claus is. I mean, you know, it's just a different – it's a different world, but how – I guess our question is how the immigration laws are to be applied. Well, the Convention Against Torture is clearly intended to be – It doesn't just say public officials. It says other persons acting in official capacity. It doesn't just say torture by public officials. It says with the consent, acquiescence. It just goes on and on trying to cover as many persons as possible. The major limitation is the 51% hurdle. And if you can meet that, then you should be able to get it. I'd also like to discuss the acquiescence issue because that is – I mean, the board did clearly address that issue. And the first – I mean, the board's acquiescence holding is basically inconsistent. First, it holds that Afghanistan is so weak that it can't reasonably control warlords like Dostum. And then on the other hand, it says, well, you can't consider that Afghanistan acquiesced because, you know, the central government made patrols outside of Kabul. But we know that those patrols weren't effective because just a sentence earlier, they said that the central government couldn't reasonably control people like Dostum. I'd like to go back to the regulation, which is what this Court has always relied on, the regulations, not matter of SV, which this Court has overruled. 8 CFR 208.18a7 – that's 208.18a7 – defines acquiescence as follows. Quote, acquiescence of a public official requires that the public official, prior to the activity constituting torture, have an awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity. In other words, awareness plus a failure to intervene equals acquiescence. This is a generous definition of acquiescence because, again, we're just defining what acquiescence is. You still have to meet the 51 percent hurdle. And, of course, pain and suffering that you have to be afraid of, that you have to face, has to be severe enough to be considered torture. When the Board attempted to narrow the definition of acquiescence in matter of SV, it said that you had to be – the government had to willfully accept the torture. Well, this Court overruled that and said that, no, the regulations can only require awareness plus a failure to intervene. But once again, in this case, the Board has required more than the regulations require. It has required an ability to reasonably control, and that's precisely the same mistake that it made in matter of SV. Matter of SV, it termed as – it said that you couldn't willfully accept torture if the government was powerless to stop it. Well, this is basically saying powerless to stop it as unable to reasonably control. So, again, it's going back to the matter of SV for that. And under this Court's decision in Zhang and Ochoa, I mean, that's just not permissible. That's the wrong standard. And the second basis for the Board's acquiescence holding, it says – it said that it basically establishes a rule of law that any opposition to a torturer establishes non-acquiescence. We know that it can be any opposition and not measured in any type of amount because the Board had just, the sentence before said, the government cannot reasonably control Dostum. So we know that the patrols outside of Kabul did nothing to reasonably control Dostum. So it's basically saying any token display of opposition to a torturer establishes non-acquiescence. I mean, that would gut the Convention Against Torture because you could just pay lip service to it. As long as you do anything adverse to a torturer, a notorious torturer like General Dostum, who's been called the Joseph Stalin of Afghanistan, anything adverse to them, no matter how effective or not, would preclude Convention Against Torture relief. And that's a per se rule of law that is not supported by the regulations. It's not supported by the Convention Against Torture. It's something that this Board probably decided just to get rid of this claim. And, you know, importantly, Zeng v. Zauschgraf, the decision of this Court, would have turned out a lot differently if token opposition was all that was required to establish non-acquiescence. In Zeng, the Chinese government imprisoned and stripped of party membership scores of human traffickers who were committing torture. It did a lot to prosecute those traffickers and to stop the trafficking. But still, that wasn't what the Court based its decision on. Instead, it turned to the awareness issue, which is really was the heart of that case. But Zeng, that list would have turned out much differently if any action adverse to the human traffickers would establish non-acquiescence. I'd like to just finish with what we're asking the Court for. A, we're asking that public official or other person acting in official capacity must mean something different, but then remand it to the Board to define exactly what those mean. B, acquiescence requires nothing more than awareness of and a failure to intervene to prevent torture which is exactly what the regulations require and what this Court required in Ochoa and Zeng. And C, token displays of opposition to notorious torturers does not establish non-acquiescence. And with that, I'd like to preserve the balance of my time if the  Kagan. Okay. Thank you, Mr. Mossman. May it please the Court. Mark Penick, Department of Justice, representing the Attorney General. I will leave the jurisdictional issue following Judge Reimer's suggestion to my 28J letter which I filed with the Court late the evening of the 25th, because I think it's utterly clear that the limitations imposed by 1252 on review of criminal aliens apply to CAT claims. Every circuit to have considered it, including this Court, in the very case cited by Plano, our petitioner, so holds. So that the only questions before this Court are constitutional questions and questions of law. That means that this Court may not review the BIA's decisions under the substantial evidence standard of review. That means that the BIA's decision that the Board's ultimate conclusion that there is no acquiescence is a factual determination. Well, not if it's under an incorrect legal standard. That would be correct, right. But assuming that the Board followed the correct legal standard, the ultimate decision whether or not there is or is not an acquiescence would be factual, subject to review normally under a substantial evidence question. So the question before the Court was whether or not there was effective response, for example, of the Kaiser government to the activities of General Dorsum. That's a factual inquiry. Whether or not they sent out patrols far enough or were effective in controlling them. That's a factual inquiry. The Board said that that was enough. Now that's a legal inquiry whether or not there has to be an effective. Now Plano's petitioner argues for the very first time in his reply, because it's not mentioned in his opening brief, that the concept of the non-acquiescence requirement that there must be, and I read the regulation here because this is really very important, must have an awareness of such activity and thereafter breach his or her legal responsibility to intervene and prevent such activity. Petitioner reads that to mean that you actually must be successful to prevent torturous activity once that awareness is there. That is not the law. That certainly is not the law as the Board sees it. And the Court, the Sixth Circuit in the Alley case, the First Circuit in the Tor case, and indeed this Court, arguably in the Asinor case, have recognized that what is required here is a response, an attempt. To say that there has to be an effective response would mean that we would have to have the government, in a particular case, would have to have a policeman in every potential torturer's bedroom or living room. We can't control crime in the inner cities, so the fact that criminal offenses take place can't be what's intended. But by the opposite extreme, something that's plainly a futile gesture, where everybody knows that, in this instance for example, that the government's not in a position to patrol the whole nation. There are parts of the nation which are effectively under the control of somebody else, and the government may make an occasional gesture, but nobody's seriously of the belief that that's going to change things very much. I mean, you've got a spectrum here. Well, Your Honor, I don't think the regulations require the impossible. I don't think this regulation requires the Kazakh government to launch a civil war against General Dorsum to rein in his activities, where perhaps he probably doesn't even think they could win such a civil war, but in any event, a civil war is not required. The regulations language does not require that you actually be effective. It requires a breach of his or her legal responsibility to intervene. Is there a legal responsibility to intervene where you have no control? And what is the source of that legal responsibility? Is it the process of the United States courts to say what the legal responsibility is of the Kazakh government to do what it knows it cannot do? If there is no responsibility, then the regulation's an empty letter. I don't think you mean that there's not a responsibility. There may well be a legal responsibility to do something, but to the extent that there is a breach of that responsibility doesn't mean that you say that you have to be effective. Simply because you can't be effective doesn't mean there's a breach. A breach implies that you could do something about it and you failed to do something about it. Where you have no control, then there's no breach. That seems to me to make obvious sense. Otherwise, we're going to have the various courts of appeals of this country saying, well, the breaches of various countries' laws at any given time, which is going to change for every single country in the world. That's absurd. Mr. Riske, I have kind of, I suppose, a simple-minded question. We have now twice, again, correctly or incorrectly, we have twice said that SV, we've twice disproved it. And the Board here relies on it. You, I know, will parse it and say, well, it relies on some of it and not the disproved portion of it, but I have a little trouble knowing how we know that. Well, you know that in this case by virtue of what the Board said. The Board cited SV for the proposition that it doesn't have a breach of this duty. It doesn't apply where it has no control. Now, the court in Zane did not address that. Now, the petitioner cites it to its brief. But if you look at the page the petitioner cites in Zane 1195, they're talking about the Board's thereafter imposition that there's no appeasance unless the government official was willfully accepting. Now, the Board nowhere applied that standard in this case. And to the contrary, the only thing that this Court need require of the Board is that its course of action be reasonably discerned. It is utterly clear that the Board did not require a willing acceptance of the torturous activities of General Absorption. The Board, this Court in Zane, did not reach the question. And if you read that section on 1195, there's two sentences that the Board is – that the Court is quoting from the SV opinion. And the Court focused on the second sentence, which is conveniently omitted from Petitioner's brief, and that is the willful acceptance portion. If the Board had simply said the Respondent must do more than show that the officials are aware of the activity constituting torture but are powerless to stop it, that would have been a different case. But the Board in SV that the Court thereafter focused on was the imposition of the willful acceptance standard, which the Court said was wrong. It thereafter remanded and said, consider the evidence without requiring willful acceptance. That's exactly what the Board did here. It did not require willful acceptance. There's nothing in this opinion to suggest it did that. But the legal question before the Court is then whether or not a situation where the government had to recognize government, as Your Honor points out, has the power to control. That, if it has some power to control. Kennedy. Let me read from the next page of Zane. There is nothing in the understandings to the convention approved by the Senate or the INS's regulations implemented in the convention to suggest that anything more than awareness is required. Well, this is right after the sentence where they quote, with approval of the Board's regulations, A7. And that's awareness plus breach of legal responsibility. So there was a shorthand response there. But I don't think there's anybody disputing, and certainly Petitioner doesn't dispute here, that it has to breach of a legal responsibility. It's both awareness and breach. So, and Zane, it certainly can't be read as saying that there is something there. Indeed, in the Orchard Decision, this case said that, this Court said that, and this is important. It rejects the idea that there must be successful. This is at page 406, F3rd, 1172. For relief under CAT, a petition need only prove that the government is aware of a third party's torture activities and does nothing to intervene to prevent it. That's this Court's decision that came after Zane. Now, the Board found here that the Kazakh government was doing something. Now, that's a, and even, we wouldn't necessarily accept the Orchard's description of A7, because I think A7 is the controlling authority here. But certainly, even after Zane, the Court doesn't require success. It simply says you can't do nothing. The Board found it did something. That's a factual determination not subject to further review. That's the end of the inquiry. Now, as to the second question, Petitioner's first, actually, is that official, something, a person acting in an official capacity means something other than a public official. I'm willing to accept that for purposes of argument. But as Your Honor's analogy suggests, it is simply a person who has been given official power, a private person who has been given official power by the recognized government. For example, a commission to do acts on behalf of the government. It still has to be official, an official capacity. An official capacity means something that the government has officially given it. The Causeway government has not given anything official to General Dorfman. Not in the slightest. He's a rule. Roberts. Well, at least as of the time of this record. Carvin. That's correct. And we're confined to the record. Roberts. Because, you know, history continues. Carvin. History continues, and it might change tomorrow. But we're confined to the record. Roberts. Do you have any information as to whether it's already changed? Carvin. Not that I know of, Your Honor. And I would tell the Court if I did. But I certainly have not been privy to anything like that. So there's no basis on this record for overturning the Board's finding. He's an unlawful warlord. He's a rogue warlord engaged in illegal activities. That is not someone exercising, a private person exercising official capacity powers. He's a powerful guy, but he's not an official. And he's not a person exercising official duties or capacities. As if he may have been a former sheriff, in Your Honor's analogy, but he was kicked out of office by a revolution and he still wants to throw his weight around. But that doesn't make him a party or a representative of the new government that has been recognized as such by the United States and all other countries in the world. So we have a situation here where we have an individual who is acting purely as a private party. A thug. A powerful thug. But that, under the law and under the Convention, is not sufficient to make him a governmental party. Kagan. Whether or not your argument is correct, why shouldn't that be something that the Board decides in the first instance rather than us? Well, you know, plaintiff says he made this argument. Petitioner says he made this argument to the Board. But he didn't. I'm looking at the record on page 84, the record. And the only thing he says is that General Dorsum's, quote, is a government actor because his position as a regional official and a powerful ally of the central government. Now, that's not the same thing as saying to the Board. Isn't it? Page 33, it's under a heading that wouldn't clue anybody into anything. But it argues that Dostrum is a person acting in an official capacity because he operates his own private little government in his area. Tisa and Karzai cannot exercise control over him or even the highways in his regions, even if he were not a de facto official. Tisa has acquiesced to his notorious use of torture, et cetera. Now, that's a quote out of page 33. Your Honor, that's really not enough to apprise the Board that there is a distinction to be drawn. But anyway, the Board did not. I don't quarrel with that. That's why I was having the conversation with Mr. Moskvin, that it's awfully darn oblique. Well, and consider what the Board did. But mainly it's oblique because it's buried. It's not oblique in the statement. Consider as well what the Board did here. The Board did. Let's not either one of us get sidetracked by whether the issue was raised or not. The heart of my question is whether that's not a call that shouldn't be made in the first instance by the BIA. I think the BIA made it here. That's what I'm suggesting. When it held that he was a rogue warlord, the Board, by definition, rejected the idea that he was a person acting in an official capacity. Okay. So what do we discern from that for the next case we get, which comes in and says that, you know, some drug lord in Honduras is a de facto government because he runs half the country and he's got his own police force. He's got his own army. He's got his own, you know, whatever. So he's actually running the place. Now, from the Board's decision in this case, do we discern something that's helpful in deciding that case? I think you can because what you found here was the Board saying that this person is nothing other than an unlawful warlord, a person who cannot by definition exercise any governmental authority in an official capacity or any other way. I think the general principle of administrative law, which I ask the Court to be guidance here, is that you don't require an administrative agency to be precise. All you have to require is that the agency's actions and rationales be fairly discernible. And what the Board did here was reject out of hand any suggestion that there was official involvement in General Dorsum's decisions and actions. Now, that's enough, particularly for an agency such as the BIA, which is overwhelmed with thousands and thousands of cases. But as a general administrative law principle, that's enough. And I'm happy to brief that further if the Court would like, but the idea here that the Board's actions may be discerned is clear enough, so there's a pointless remand here for the Board to say, well, was he acting in an official capacity? The Board says, no, we already told you, he's an unlawful warlord. They might shed some light on what it means and whether Mr. Mossman's view is right or not. Well, Your Honor, I think as a matter of law, if a person, the Court can say that a person engaged in illegal activities who exercises no official sanction, who's not a public official, is not a person acting in an official capacity, I think this Court can say that. You don't need a remand for that proposition because the Board has already held the underlying fact that the Court would ask the Board to apply under this standard as doesn't obtain, that there is no official capacity. So a remand for a pointless factual determination is not something this Court should do. I think no Court that I know of does that, this Court or any other Court. And I've been doing this for nearly 25 years. The idea here to remand for a legal determination is basically, you should wait for the next case in which that is correctly presented, and perhaps in which then you're not bound to review only constitutional questions and questions of law, because then you might have a full record as to whether or not there were facts here that were supported by substantial evidence. But the idea here that the Board has somehow acted illegally in saying that this person, General Dorstan, doesn't exercise official capacity when he's in a legal war, that's just clear, utterly clear on the basis of the Board's findings. To remand for a pointless factual inquiry is something this Court should not do. I see my time is almost up. I wanted to very briefly talk about the Zinn case, because that is the law of this case. Now, in S.V., which the Your Honor has expressed reservations about, that decision was only on the question of willful acceptance. And that the Board did not follow here and did not purport to follow here. That's very important, because Zinn, S.V. stands for a bunch of legal propositions, and to say that the Board has erred simply by citing it for a different proposition that the Court never addressed is, bespeaks a disrespect for the administrative process, which is unacceptable and unjustified here. This Court ---- Kagan. Well, that puts us between a rock and a hard place. We're either disrespecting the administrative process or disrespecting our prior panel decision. Oh, no, Your Honor. I don't think Your Honor is disrespecting that at all, because the subsequent decision of Orchard says you don't have to be successful. It doesn't talk about having anything other than doing nothing. Orchard says that as long as you don't say that he hasn't done nothing, then the convention is satisfied. And the Board here clearly said that the Kaisei government has done something, and whether or not sufficient or not is a factual determination, not before the Court. That's enough, and that should be enough. And I don't think that it's fair to say that the Board willfully discarded this Court's decisions, and it did not. It did not impose what the Court found was error, did not require a knowing of acceptance, did not require a willful acceptance. None of those can be fairly read into the Board's opinion. It's just not there. What the Board said is that there was no control, and that, as a legal point, the Board is entitled to do. Now, that's a separate issue and a separate section of SV. And that is a question of law. I would agree with Your Honor, but I think that's a correct statement of the law, under Ale, Azor, and Tor. And there is no case, any case, that I have found, and I've looked, that says that's not sufficient. That's the question of law before, Your Honor, and that's the question of law that the Board properly determined. If no further questions, I ask. I mean, I wrote a note to myself to follow up on something that I didn't see until I opened the book just now. But the note has to do with an allusion I made before as to whether General Dostum has a current position with the government. In fact, somebody in my office has tracked that information that he does. Now, we're reviewing the administrative record. But if, in fact, his position has changed in a way that seems to me critical with regard to what the BIA determined as an understanding of the fact, what would be the procedure to follow? This Court is jurisdictionally limited to the record. It may not go beyond the record. I would suggest to Your Honor that looking beyond the record is wrong and without the Court's jurisdiction. To the extent Your Honor has found something outside the record, you should ignore it. That's the law. Well, I'm not asking you specifically what we should do. I'm also asking you what should anybody do in a circumstance. I mean, it's a fluid world. Situations change. Now, what can a Petitioner do if, in fact, something has happened which changes the calculus? There are procedures in place for a Petitioner to ask for reopening. There are deadlines for doing that. And there's some of, you know, finality that's associated with these proceedings that have to be followed. I do not know whether or not this Petitioner is in a position to ask for reopening. That is, I haven't looked into that question. And I wouldn't hesitate to opine on that. Certainly in the appropriate case, to the extent that facts come up, and it's otherwise not a tying bar, a Petitioner can always ask the Board to reopen to consider new facts. To a large extent, the BIA has a lot of discretion on that. I had a case in Fifth Circuit where that was the case. So that's committed to the Board's discretion. But to the extent that a Petitioner can make a compelling finding or showing that the facts have changed from how it was produced before the IJ, the BIA has within its discretion to remand it back for consideration of those facts. That's not this case. This case is closed. Thank you, Your Court. Kagan. Mr. Moskowitz. Moskowitz. I can understand the government's frustration with remand, but the Supreme Court has made it clear that that's what needs to happen. And I want to also make it clear that we're talking about the acquiescence definition. This doesn't require that the government intervene to prevent torture 100 percent of the time. I mean, I guess that's kind of a floodgates argument. The definition requires the government to intervene to prevent, but to actually receive cat relief, you have to show that the probability of torture is 51 percent. And if the government intervenes to prevent most of the time, and if it functions like most developed countries, you're never going to get cat relief. But when the government fails in its duty at least 51 percent of the time, then you're going to have a situation where acquiescence will give you cat relief. And turning to willful acceptance, the board in matter of SVU erred by requiring willful acceptance, but it defined willful acceptance as being powerless to stop the torture. And that's basically what it is required here by saying that the government must be able to reasonably control the torturer. So it's all in the same thing. And quickly to the jurisdictional issue, I know that the Court may not be interested in that, but I'd like to point out Unicalu v. Gonzalez, that's 416, F3rd, 931, 937, and that's where this Court held that if the order of removal wasn't predicated on the conviction that's listed under 1252A2C, then the Court had jurisdiction to review the facts for substantial evidence. Again, I don't think that's important because I think it's just legal issues that are presented here, but just for the sake of the decision. And finally, I'd like to point out that this was a very ambiguous sentence by the board and shouldn't create law based on that. Okay. Thank you, counsel. That's a helpful argument. We appreciate that. The matter just argued will be submitted.
judges: Gibson (8th Cir.), Rymer, Clifton